IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 11-06567(ESL) |
| | : | |
| LYMARI LOZADA RIVERA | : | |
| Debtor | : | CHAPTER 13 |
| | : | |

OPINION AND ORDER

This case is before the court upon (*i*) Debtor's *Motion for Reconsideration* (Docket No. 23) of the *Order* granting the *Trustee's [Unopposed] Objection to [Debtor's] Exemption* under 11 U.S.C. § 522(d)(1) (Docket No. 16); (*ii*) the Trustee's *Opposition to Debtor's Motion for Reconsideration* (Docket No. 37); and (*iii*) Debtor's *Short Reply* thereto (Docket No. 39). The Trustee sustains that Debtor's claimed exemption on her real property should be denied because the structure being constructed there is not her residence and thus 11 U.S.C. § 522 (d)(1) is inapplicable. The Trustee also alleges that Debtor's request for reconsideration should be denied given the strict and narrow criteria adopted by the Court of Appeals for the First Circuit on setting aside orders under Fed. Rs. Civ. P. 59(a) & 60(b). Conversely, Debtor contends that the real property does qualify as her residence under the criteria used by the courts when considering this exemption and that the court should allow the *Motion for Reconsideration* to review the merits of the homestead controversy because the explanations for her failure to submit a timely answer to the Trustee's objection constitute excusable neglect under Fed. R. Civ. P. 60(b). For the reasons stated below, the court denies Debtor's *Motion for Reconsideration* (Docket No. 16).

Procedural Background

Debtor filed a voluntary Chapter 13 petition on August 2, 2011 (Docket No. 1) along with her Schedules and Statements of Financial Affairs. In Schedule A, she listed one real property: Lot No. 1 measuring 1,164 m² located at Road # 167, Km 1.6, Dejaos Ward, Bayamon, Puerto Rico, where a house is being constructed (the "Real Property"). Only the exterior walls of the house have been built, not the ceiling. Debtor reported the current value of her interest in the Real Property at $33,000.00 with a secured claim on it of $12,208.22. See Schedule A (Docket No. 1, p. 11). In In her description of the Real Property, Debtor indicated that the value lot of land of the Real Property (not the house under construction) at $15,000, and claims to have invested $5,000 in the construction

of the house. Id. (Docket No. 1, p. 11).  In Schedule C, Debtor claimed a $20,791.78 homestead exemption on the Real Property pursuant to 11 U.S.C. § 522(d)(1).

On November 3, 2011, the Trustee filed an *Objection to Debtor's Claim for Exemption* (the *Objection*", Docket No. 16) arguing that Debtor's Real Property is not yet a residence because it is still under construction.  Consequently, the Debtor is not actually using the Real Property as her primary residence and may not claim a homestead exemption over the same.  After due notice and no opposition from Debtor, on November 23, 2011, the Court entered an *Order* granting the Trustee's *Objection* (Docket No. 21 referring to Docket No. 16).

On November 28, 2011, the Debtor filed a *Motion for Reconsideration of Order Granting [the] Trustee's Objection to Exemption* (the "*Motion for Reconsideration*", Docket No. 23) alleging that she intended to file a timely answer to the *Objection*, but was unable to execute a sworn statement on or before November 23, 2011, the deadline to file an answer, due to personal circumstances.  Debtor also alleges that she and her husband began constructing a residence in the Real Property through a personal loan secured by a mortgage, but that the process of construction is currently stayed for lack of funds due to the substantial medical expenses they have had to incur for the healthcare of their son, who has severe cerebral palsy.  Debtor acknowledges that she sleeps with her family at her mother's house, which is adjacent to the Real Property.  She argues, however, that for purposes of Section 522(d)(1), the term "homestead" cannot be limited to the place where her bed is located and that the Real Property can be claimed as exempt because the term includes adjacent lots that are used in connection with the residence, such as the land and structure where the Debtor and her family play, clean and park their automobiles, and use as a terrace and storage.  Lastly, Debtor avers that pursuant to Fed. Bankr. R. 4003(c), the Trustee has the burden of proof of demonstrating that the exemption is not properly claimed and that the Trustee has not met that burden.

After requesting and obtaining an extension of time to reply to Debtor's *Motion for Reconsideration* (Docket Nos. 24, 25, 35 & 36), on January 17, 2012, the Trustee filed an *Opposition* (Docket No. 37) sustaining that the court should not even consider reviewing the merits of the *Motion for Reconsideration* because the relief afforded under Fed. Rs. Civ. P. 59 & 60 is sparingly granted

2

and properly viewed as an extraordinary remedy. Regardless, the Trustee also briefed his objection to Debtor's claimed homestead exemption alleging that the Debtor admitted that she and her family do not live in the Real Property, that it is not their actual "residence", but rather their residence is her mother's house. where they all actually live. The Trustee further asserts that the precedents cited by Debtor regarding the broad interpretation of the term "homestead" are not applicable to the instant case because of a crucial difference: the debtor in this case does not own both lots, and thus cannot subsume the two properties.

On January 23, 2012, Debtor filed a *Short Reply* to Trustee's *Opposition* (Docket No. 39) indicating that her mishap to execute the sworn statement to submit a timely answer to the Trustee's *Objection* constituted excusable neglect under Fed. R. Civ. P. 60(b). In addition, Debtor revamped all her previous arguments in the *Motion for Reconsideration* regarding the claimed homestead exemption. No further sur-replies were filed.

Applicable Law &amp; Analysis

*(A)    Debtor's Motion for Reconsideration*

Although Debtor did not denominate any particular rule as the springboard for her *Motion for Reconsideration* (Docket No. 23), she subsequently indicated in her *Short Reply* that she "is not requesting a new trial under Rule 59 of the Federal Rules of Civil Procedure" but was rather "requesting the relief from the order granting the Trustee's objection to the exemption under Rule 60(b) of the Federal Rules of Civil Procedure" arguing that "answering the Trustee's [*Objection*] just a few days later due to Debtor's impossibility to execute the sworn statement was excusable neglect that warrants the revision of the order" (Docket No. 39, pp. 4-5).

Motions to reconsider are not recognized by the Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedure in *haec verba*. See Jiminez v. Rodriguez (In re Rodriguez), 233 B.R. 212, 218-219 (Bankr. D.P.R. 1999), conf'd 17 Fed. Appx. 5 (1st Cir. 2001); Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991); Lavespere v. Niagara Mach. & Tool Works Inc., 910 F.2d 167, 173 (5th Cir. 1990), cert. denied 510 U.S. 859, abrogated on other grounds by Little v. Liquid Air Corp., 37 F.3d 1069, 1075-76 (5th Cir. 1994). Rather, federal courts have considered motions so denominated as either a motion to "alter or amend" under Fed. R. Civ. P. 59(e) or a

3

motion for relief from judgment under Fed. R. Civ. P. 60(b).  See Fisher v. Kadant, Inc., 589 F.3d 505, 512 (1st Cir. 2009) (noting a motion for reconsideration implicated either Fed. R. Civ. Pro. 59(e) or 60(b)); Equity Security Holders' Committee v. Wedgestone Financial (In re Wedgestone Financial), 152 B.R. 786, 788 (D. Mass. 1993).  "These two rules are distinct; they serve different purposes and produce different consequences.  Which rule applies depends essentially on the time a motion is served.  If a motion is served within [fourteen][1] days of the rendition of judgment, the motion ordinarily will fall under Rule 59(e).  If the motion is served after that time, it falls under Rule 60(b)."  Van Skiver, 952 F.2d at 1243.  The substance of the motion, not the nomenclature used or labels placed on motions, is controlling.  Thus, for example, even if filed within the time limit for a motion under Fed. R. Civ. P. 59(e), a motion seeking relief on grounds of excusable neglect will be treated as a Rule 60(b)(1) motion, because Rule 59(e) does not provide a vehicle for a party to undo its own procedural failures.  See 12-60 Moore's Federal Practice Civil § 60.03.  Also see United States v. $23,000 in U.S. Currency, 356 F.3d 157, 164-165 (1st Cir. 2004) (even if timely filed under Fed. R. Civ. P. 59(e), a motion seeking relief on grounds of excusable neglect will be treated as Fed. R. Civ. P. 60(b)(1) motion, because Fed. R. Civ. P. 59(e) does not provide a vehicle for party to undo its own procedural failures); Jennings v. Rivers, 394 F.3d 850, 854-856 (10th Cir. 2005) (a motion timely filed under Fed. R. Civ. P. 59(e) but asserting ground for relief specified under Fed. R. Civ. P. 60(b), should be evaluated under standards applicable to Fed. R. Civ. P. 60(b) motions).

Having the Debtor expressly waived the remedies provided in Fed. R. Civ. P. 59, the court will entertain her *Motion for Reconsideration* under Fed. R. Civ. P. 60(b), made applicable in bankruptcy cases by Fed. R. Bankr. P. 9024.  Although in her citation of Fed. R. Civ. P. 60(b) Debtor emphasized subsections (1) and (6) to apparently seek relief under both [*Short Reply,* Docket No. 39, p. 5], the Supreme Court has ruled that "clause (6) and clauses (1) through (5) are mutually exclusive" and thus, a party may not seek relief in a Rule 60(b)(6) motion for any of the reasons enumerated in clauses one through five, such as excusable neglect.  Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 864 (1988).  Also see Ungar v. PLO, 599 F.3d 79, 85 (1st Cir. 2010)

---

[1] See the most recently amended version of Fed. R. Bankr. P. 9023.

(a motion under Rule 60(b)(6) is appropriate only when none of the first five sections pertain, and section (6) may not be used as means to circumvent those five preceding sections); Gonzalez v. Walgreens Co., 918 F.2d 303, 305 (1st Cir. 1991) ("Rule 60(b)(6) applies only to grounds for relief not covered by the first five subdivisions of Rule 60(b)").  Consequently, the Court will review the *Motion for Reconsideration* only for the "excusable neglect" she alleges under Fed. R. Civ. P. 60(b)(1).

Fed. R. Civ. P. 60(b)(1) provides that "the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... mistake, inadvertence, surprise, or excusable neglect."  In Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership, 507 U.S. 380, 395, 113 S. Ct. 1489, 1489, 123 L. Ed. 2d 74, 89 (1993), the Supreme Court held that the determination of what constitutes "excusable neglect" is an equitable one, taking into consideration certain factors: (1) the length of the delay and its potential impact on judicial proceedings; (2) the reason for the delay, including whether it was within the reasonable control of the movant; (3) whether the movant acted in good faith; and (4) whether granting the relief will prejudice the opposing party.  The Supreme Court concluded that "excusable neglect" is a flexible concept that is not limited to circumstances beyond the control of the movant.  Id. at 388.  Prior to the Supreme Court's decision in Pioneer, the First Circuit had held that Fed. R. Civ. P. 60(b) was a vehicle for extraordinary relief, and that motions invoking the rule should only be granted under exceptional circumstances.  See Lepore v. Vidockler, 792 F.2d 272, 274 (1st Cir. 1986).  Subsequently, in Pratt v. Philbook, 109 F.3d 18 (1st Cir. 1997), the First Circuit incorporated the Pioneer doctrine and has sustained it ever since.  See United States v. Union Bank for Sav. & Inv.(Jordan), 487 F.3d 8, 24 (1st Cir. 2007).  Also see Aja v. Fitzgerald (In re Aja), 441 B.R. 173, 177 (B.A.P. 1st Cir. 2011) (upholding the Pioneer test).  The most important factor in this test is the reason for the delay, which requires a statement of the reasons and a satisfactory explanation for the delay.  Graphic Communications Int'l Union v. Quebecor Printing Providence, Inc., 270 F.3d 1, 6 (1st Cir. 2001); EnvisioNet Computer Servs., Inc. v. ECS Funding LLC, 288 B.R. 163, 166 (D.Me. 2002).  No "excusable neglect" can be determined in the absence of unique or extraordinary circumstances. The trial court has wide discretion to determine the existence of neglect or lack thereof and whether it was

excusable or not. See Graphic Communs. Int'l Union, Local 12-N , 270 F.3d at 6-7; $23,000 in U.S. Currency, 356 F. 3d at 165 ("[Trial] courts enjoy considerable discretion in deciding motions brought under Civil Rule 60(b)"); In re Shepherds Hill Development Co., 316 B.R. 406, 418 (B.A.P. 1st Cir. 2004).

Taking into consideration the travel and circumstances of the present case, and in interest in resolving disputes on their merits, the Court finds that Debtor's failure to timely file an answer to Trustee's *Objection* was due to excusable neglect under Fed. R. Civ. P. 60(b)(1). Her *Motion for Reconsideration* was filed only 5 days after the *Order* was entered (Docket Nos. 21 & 23), which the court does not find to be a significant delay. Compare with Roldan v. Cooperativa De Ahorro & Credito Roosevelt Roads, 2006 Bankr. LEXIS 3913 (Bankr. D.P.R. 2006) (creditor filed a motion to vacate the default judgment and an answer to the complaint almost two months after the judgment was entered. The Court found that two months was unexcusable neglect that delayed the proceedings.) Moreover, the Court also finds that the Debtor acted in good faith and that her failure to execute a sworn statement in a timely manner was justified in consideration of her personal circumstances, including her son's condition. Finally, this court finds that the Debtor established meritorious arguments in her *Motion for Reconsideration* to support her position against the Trustee, who has not claimed or showed any prejudice from Debtor's brief delay. The Court also weighs the fact that Debtor had not previously missed any previous deadlines nor requested extensions of time. Therefore, the *Motion for Reconsideration* is granted to the extent of determining Debtor's excusable neglect. The court now proceeds to review its merits.

*(B)     Exemptions in general*

When a debtor files a bankruptcy petition, all of his/her/its assets become property of the bankruptcy estate [11 U.S.C. § 541] subject to the debtor's right to reclaim certain property as exempt under 11 U.S.C. § 522. Exempt property will be excluded from the bankruptcy estate unless a party in interest objects. See 11 U.S.C. § 522(l); Schwab v. Reilly, 130 S. Ct. 2652, 2656; 177 L. Ed. 2d 234, 242 (2010). The mere fact that debtors claim an exemption does not necessarily mean that they are entitled to it, since there must be compliance with statutory requirements and then an order of the bankruptcy court to that effect. See 9A Am. Jur. 2d Bankruptcy § 1392; In re Rolland, 317 B.R. 402,

412 (Bankr. C.D.Cal. 2004); In re Colvin, 288 B.R. 477, 483 (Bankr. E.D.Mi. 2003); Carlucci & Legum v. Murray ( In re Murray), 249 B.R. 223, 230 (E.D.N.Y. 2000).

Property that does not belong to the debtor or property in which the debtor has no interest at the time of the filing of the bankruptcy petition generally cannot become part of the bankruptcy estate under 11 U.S.C. § 541 and consequently cannot be exempted under 11 U.S.C. § 522.

*(C)      The homestead exemption*

Debtor claims a homestead exemption on her Real Property under Section 522(d)(1) of the Bankruptcy Code (Docket No. 1, p. 15), which provides as follows:

(d) The following property may be exempted under subsection (b)(2) of this section:

(1) The debtor's aggregate interest, not to exceed $ 21,625 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a **residence**, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.  11 U.S.C. § 522(d)(1) (emphasis added).

The term "residence" is not defined in the Bankruptcy Code.  It is not synonymous of "domicile" because "the specified enumeration of each in the Code indicates an intention to maintain a legal distinction between them".  In re Marsico, 278 B.R. 1, 4 (Bankr. D.N.H. 2002), quoting from In re Tomko, 87 B.R. 372, 374 (Bankr. E.D. Pa. 1988).  In the Tomko, the Court carefully analyzed the purpose behind Section 522(d)(1). It found that prior to the passage of the Bankruptcy Code, debtors were limited to the allowance of exemptions as permitted by the state laws of their domiciliary state. Tomko, 87 B.R. at 373. Homestead was a common exemption under most state laws. Id. at 373.  The legislative history of the Bankruptcy Code then revealed that:

subsection (d) [of 11 U.S.C. § 522] specifies the Federal exemptions to which the debtor is entitled.  They are derived in large part from the Uniform Exemptions Act, promulgated by the Commissioners of Uniform State Laws in August, 1976.  Eleven categories of property are exempted.  First is a **homestead** ... which may be claimed in real or personal property that the debtor or a dependent of the debtor uses as a residence. Id. at 374 (emphasis added), quoting House Report No. 95-595 that accompanied H.R. 8200, 95th Cong. 1st Sess. (1977), from which Section 522(d)(1) was derived.

The Tomko court concluded that because the term "homestead" was used in the legislative history to describe or modify the term "residence", "the purpose of subsection 522(d)(1) was to provide those debtors eligible to select the federal exemptions with a homestead exemption, and that the term 'residence' must be interpreted in this light."  87 B.R. at 374.  Also see In re Marisco, 278 B.R. at

7

5 (applying that same analysis). In <u>In re Brent</u>, 68 B.R. 893, 895 (Bankr. D. Vt. 1987), the court explained that "a homestead is a property interest [and] property interests are not created by the Constitution, but by existing rules or understandings that stem from an independent source such as State law." Accordingly, the Puerto Rico homestead law will be examined in order to determine the meaning of the term "residence" for Section 522 purposes.

Because Debtor filed her bankruptcy petition on August 2, 2011, the court will first analyze the Puerto Rico Homestead Act No. 87 of May 13, 1936, as amended through 2003[2], codified in Chapter 187 of the Puerto Rico Civil Code, 31 L.P.RA. §§ 1851-1857 (the "PR Homestead Act of 1936"), which was the governing law at the time[3].

Section 1 of the PR Homestead Act of 1936, as amended, provided as follows:

> Every person who is the head of a family shall be entitled to possess and enjoy as a **homestead**, a property that does not exceed fifteen thousand dollars ($15,000) in value, consisting of a parcel of land and the buildings thereon, of any farm, plantation or parcel of land, **owned** or lawfully possessed, **and occupied as a residence by him or by his family**. The homestead right is unrenounceable; and any pact to the contrary shall be declared null, except that said homestead right may be renounced in all cases of mortgages insured or executed in behalf of the Federal Housing Administrator, or in cases of loans to veterans insured or guaranteed by the United States Veterans Administration, and in all cases of mortgages, sharecropping contracts, and promissory notes made in behalf of the Federal Land Bank of Baltimore, the Puerto Rico Production Credit Association, the National Farm Loan Association of San Juan, Puerto Rico, the Small Business Administration, created by Public Law No. 163 of the 83rd Congress of the United States of America, approved June [*sic*] 30, 1953, and of loans and mortgages secured or granted by the Puerto Rico Housing Financing Authority, and the Farm Credit Corporation and the Farmers Home Administration, and in the cases of conventional mortgages. 31 L.P.R.A. § 1851 (emphasis added).

---

[2] The PR Homestead Law of 1936 was subsequently amended by the following: Act No. 4 of March 15, 1939 (clarified that every head of a family to posses a homestead of a property up to the value of $500 and provided that said right was unwaivable except in those cases of mortgages insured by or drawn in favor of the Federal Housing Administrator); Act No. 15 of December 31, 1946 (provided that the right to homestead was unwaivable except in those cases of mortgages insured by or drawn in favor of the Federal Housing Administrator or in cases of loans to veterans insured or secured by the United States Veteran's Administration); Act No. 1 of February 11, 1955 (increased the value of the homestead protection from $500 to $1,500 and added a provision regarding the Federal Land Bank of Baltimore, the Puerto Rico Production Credit Association, and the National Farm Loan Association of San Juan, Puerto Rico); Act No. 1 of April 24, 1957 (added a reference to the Small Business Administration); Act No. 31 of June 15, 1965 (added the phrase "and of loans and mortgages secured or granted by the Housing Bank of Puerto Rico" at end of the section); Act No. 13 of May 28, 1969 (added references to Farm Credit Corporation and Farmers Home Administration); Act No. 116 of May 2, 2003 (amended the section generally, increased the value of the homestead from $1,500 to $15,000 and added the phrase "and in the cases of conventional mortgages" at the end).

[3] On September 13, 2011, the Homestead Right and Family Home Protection Act [No. 195] was enacted (the "PR Homestead Act of 2011"), which repealed the PR Homestead Act of 1936.

Therefore, in Puerto Rico, the homestead can only be claimed by the **owner** of the real property or by the head of household who "lawfully posses" the property.  The phrase "lawfully possesses" refers to cases where the property was constructed in someone else's land with the owner's consent.  See Garcia v. Tribunal Superior, 89 D.P.R. 130, 135 (1963) (analyzing the phrase "lawfully possesses" in Section 1 of the PR Homestead Act of 1936).  Notwithstanding, a homestead cannot be claimed over a leased property.  Pagan v. Quinones, 55 D.P.R. 950, 952-953 (1940).  A homestead can be claimed in contiguous and non-contiguous lots of land owned by the same head of family as long as they are used for the sustainment of the family.  Garcia v. Perez, 46 D.P.R. 31, 41 (1934) (homestead was declared over the actual residence and three non-contiguous lots of lands were declared because the family was occupying and planting crops in the ones that were non-contiguous for their sustainment).

In Puerto Rico, a repealed law can be interpreted through its subsequent amended version.  See Nadal Arcelay v. Depto. Recursos Naturales, 150 D.P.R. 715, 722 (2000).  Therefore, to interpret the PR Homestead Act of 1936, the court will also take into consideration the PR Homestead Act of 2011.  Section 3 of the PR Homestead Act of 2011 clarifies that a homestead can be claimed on a residence that belongs to an individual or head of family that is "occupied by him/her or his/her family **exclusively as a principal residence**" (emphasis added).  The words "principal" and "exclusively" had never been included in the PR Homestead Act of 1936, its predecessors or subsequent amendments until 2011.  Furthermore, the PR Homestead Act of 2011's Statement of Reasons indicate that it was enacted to "provide[] better protection to the **homes or principal residences** of all individuals residing in Puerto Rico and their respective families" (emphasis added).

Bankruptcy courts have also interpreted Section 522 of the Bankruptcy Code similarly.  The term "residence [provided in Section 522(d)(1)] at a minimum, denotes occupancy of the premises by the debtor as a **principal place of dwelling**."  In re Lusiak, 247 B.R. 699, 702 (Bankr. D.N.Oh. 2000) (emphasis added).  See also In re Healy, 100 B.R. 443, 444 (Bankr. W.D.Wis. 1989) ("occupancy requirement is the *sine qua non* of the homestead exemption"); In re Gandy, 327 B.R. 807, 810 (Bankr. S.D.Tx. 2005) ("Under the plain language of § 522(d)(1), the phrase 'uses as a residence'

denotes occupancy of the proposed exempt property by the debtor."); Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶522.09[1] (16th ed. 2011) ("Essential to the right to a homestead exemption is designation and occupancy of the property as a residence.") "Occupancy" can be actual or constructive, since absence alone is not sufficient to constitute an abandonment of the homestead. In re Lusiak, 247 B.R. at 703. There must be "some positive indication of an intent to occupy the premises; an undefined floating intention is inadequate". Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶522.09[1] (16th ed. 2011).

In the case at bar, Debtor acknowledges that she and her family do not "sleep" in the Real Property (because the construction of the residential structure has been stayed for lack of funds). She sustains, however, that they do "use and occupy" it inasmuch as they "park their cars [there] everyday, they clean their cars there, they hang and dry their clothes there, they store their tools and cleaning products [there], they fixed a swing in the ceiling of the first floor [there] and even rest in a hammock there". ¶¶ 5-8 of Debtor's *Motion for Reconsideration* (Docket No. 23, p. 2). Debtor concludes that they use the Real Property "as part and complement of their small apartment", referring to the space they "sleep" in at her mother's property that is contiguous to the Real Property, and that therefore she can claim it as her residence for Section 522(d)(1) purposes. Id. at ¶¶ 6 & 9. To support her position, Debtor cites the following cases: Fifty v. Nickless (In re Fifty), 293 B.R. 550 (B.A.P. 1st Cir. 2003), In re Marcus, 08-81050-WRS, In re Marrama, 307 B.R. 332 (Bankr. D. Mass. 2004); In re Edwards, 281 B.R. 439 (Bankr. D. Mass. 2002), People's State Bank v. Stenzel, 301 F. 3d 945 (2002); In re Giles, 2011 WL 181387 (Bankr. D. Ark. 2011), In re Hughes, 306 B.R. 683 (Bankr. M.D. Ala. 2004); In re McLachlan, 266 B.R. 220 (Bankr. M.D.Fla. 2001).

Conversely, the Trustee contends that "Debtor and her dependents' 'residence' or dwelling is at her mother's house" and that "the fact that [they] use the lot and structure under construction to place and clean their cars, ... dry their clothes, store their tools and cleaning products and place a swing and a hammock" does not detract from fact that they shelter, sleep, eat and basically live at the debtor's mother's house, which evidently does not belong to Debtor. ¶ 11 of the Trustee's *Opposition* (Docket No. 37, p. 4). Consequently, the Trustee concludes that the Real Property is "not yet a residence" for the exemption purposes provided in 11 U.S.C. § 522(d)(1). ¶¶ 4-5 of the

Trustee's *Objection* (Docket Nos. 16, p. 2 & 37).

Based on Debtor's own factual allegations, this court finds that her principal residence and place of dwelling is her mother's house, not her Real Property. Therefore, she cannot claim a homestead exemption on the contiguous property of a property that does not belong to her. Debtor's principal place of dwelling does not belong to the bankruptcy estate. She cannot claim it as exempt under Section 522 and cannot therefore claim the contiguous lots as homestead either.

The court notes that in the cases cited by Debtor[4], the debtors claiming the homestead exemption on their residence's contiguous parcel(s) actually owned both lots. That also is true in the Puerto Rico homestead cases. See Garcia v. Perez, 46 D.P.R. at 41.

In the instant case, the Debtor has acknowledged that the property she occupies as a primary dwelling is not hers. Thus, she cannot extend a homestead exemption over a real property used in connection with the property where she primarily lives but does not own (*i.e.* her mother's property) and there is no dispute that the Real Property over which she claims the homestead is not currently livable and cannot be used as a primary dwelling. Following that same logic, the Real Property is not being used "exclusively as a principal residence" by itself, and cannot be claimed as a homestead in its own right. See PR Homestead Act of 2011's Statement of Reasons.

To confront that main difference from her cited caselaw and the instant case, the Debtor briefly argues that in cases like In re Hughes, 306 B.R. 683, and In re Marrama, 307 B.R. 332, the courts permitted a homestead exemption over a property adjacent to a leased property. *Short Reply*, p. 2 (Docket No. 39). These cases are also distinguishable. In Marrama, the Debtor claimed an exemption on a real property[5] over which he had a Homestead Declaration pursuant to Mass. Gen. Laws Ch. 188, § 1. A creditor objected the claim sustaining that the debtor had abandoned it. The Court's analysis relied mainly on that Massachusetts' homestead provision, which is not applicable to the present case. Likewise, in In re Huges, the debtor claimed a $5,000 exemption on a real

---

[4] The cases are: Fifty v. Nickless (In re Fifty), 293 B.R. 550, In re Marcus, 08-81050-WRS, In re Marrama, 307 B.R. 332; In re Edwards, 281 B.R. 439, People's State Bank v. Stenzel, 301 F. 3d 945; In re Giles, 2011 WL 181387, In re Hughes, 306 B.R. 683; In re McLachlan, 266 B.R. 220.

[5] The real property in that case was rented to two tenants at the time that the opinion was entered. Id. at 336, footnote 2.

property under the Alabama Code § 6-10-2 (1975), not under the exemptions provided in Section 522 of the Bankruptcy Code, and thus in that case "state law governs the real property of th[e] exemption claim". Id. at 685. Therefore, In re Hughes is not applicable to the case at bar either.

The court finds that Debtor's Real Property is not her actual principal place of dwelling nor is it a real property contiguous to a residence she owns. The Trustee's *Objection* is granted to that extent and consequently, no homestead exemption can be claimed on the Debtor's Real Property.

*(D)      Burden of proof for objections on claimed exemptions*

The Debtor also alleges that the Trustee has not met his burden to prove that the exemption is not properly claimed. *Motion for Reconsideration*, p. 6 (Docket No. 23).

Pursuant to Fed. R. Bankr. P. 4003(c), "the objecting party has the burden of proving that the exemptions are not properly claimed." Thus, the objecting party bears the burden to establish that the debtor did not create a valid estate of homestead, or alternatively, that it no longer existed at the time of the filing of the bankruptcy. See In re Edwards, 281 B.R. 439, 446 (Bankr. D. Mass. 2002).

In the instant case, the Trustee's *Objection* is rooted on Debtor's acknowledgment that she does not "live" in the Real Property and that the construction of a structural residence therein has been stayed for lack of funds. See Debtor's *Motion for Reconsideration*, p. 2. Therefore, he rebutted the *prima facie* effect of the claim of exemption with the acknowledgment that Debtor has not resided Real Property as a primary dwelling. Debtor's argument under Fed. R. Bankr. P. 4003(c) is denied.

Conclusion

In view of the foregoing, Debtor's claimed homestead exemption on her Real Property under 11 U.S.C. § 522(d)(1) is hereby denied.

SO ORDERED.

In San Juan, Puerto Rico, this 3rd day of May, 2012.

Enrique S. Lamoutte
United States Bankruptcy Judge